UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERNESTO ALFONSO PEREZ,

    Petitioner,

v.                                    Case No.: 2:25-cv-00947-SPC-DNF

MATTHEW MORDANT *et al.*.

    Respondents,
_____/

## OPINION AND ORDER

Before the Court are Ernesto Alfonso Perez's Petition for Writ of Habeas Corpus (Doc. 1), the federal government's response (Doc. 9), and Alfonso Perez's reply (Doc. 10). For the below reasons, the Court grants the petition.

**A. Background**

Alfonso Perez is a native and citizen of Cuba who entered the United States on August 8, 2022, and was placed in immigration detention. The next day, the Department of Homeland Security ("DHS") served Alfonso Perez with a Notice to Appear ("NTA"). An immigration official determined Alfonso Perez did "not appear to be a threat to national security, border security, or public safety" and released him on recognizance pending his immigration hearing. (Doc. 9-1 at 4). In November 2022, Alfonso Perez applied for asylum, withholding of removal, and protection under the Convention against Torture by filing a I-589 with the Executive Office for Immigration Review.

On October 8, 2025, Alfonso Perez attended a hearing to adjudicate his I-589. But instead, DHS moved to dismiss the removal proceedings, and the immigration judge granted the motion. Immigration and Customs Enforcement ("ICE") agents then arrested Alfonso Perez, designated him for expedited removal, and detained him in the detention facility known as Alligator Alcatraz.

Alfonso Perez claims his detention violates the Administrative Procedures Act and his Fifth Amendment due process rights because he is not eligible for expedited removal, he was not provided notice or an opportunity to be heard, his detention is not reasonably related to a legitimate government interest, and the revocation of his parole was arbitrary and capricious. The respondents argue the Court lacks jurisdiction to consider Alfonso Perez's claims.

**B. Legal Framework for Expedited Removal**

The Immigration and Nationality Act ("INA") establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays

out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, --- F. Supp. ---, ---, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal

3

but to whom expedited removal has not been applied[.]" Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, --- F. Supp. 3d ---, ---, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

### C. Jurisdiction

The respondents argue the INA divests the Court of jurisdiction over Alfonso Perez's petition. They point to three jurisdiction-stripping sections, but the Court only needs to discuss one. 8 U.S.C. §§ 1252(a)(2)(A) bars courts from hearing certain claims relating to expedited removal. It states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other

4

> habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i)…any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title, (ii)…a decision by the Attorney General to invoke the provisions of such section, (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or (iv)…procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A). The INA carves out an exception to this jurisdiction-stripping section for habeas actions "limited to the determinations of (A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under [section 1225(b)(1)], and (C) whether the petitioner…is an alien lawfully admitted for permanent residence, has been admitted as a refugee…, or has been granted asylum[.]" *Id.* at § 1252(e)(2).

The respondents argue section 1252(a)(2)(A) strips the Court of jurisdiction over Alfonso Perez's claim because it is a challenge to DHS's implementation, invocation, and application of section 1225(b)(1) to him. Alfonso Perez does not address the effect of section 1252(a)(2)(A) on this action in any of his filings, and the Court reads the omission as tacit acknowledgment that the section applies.[1] Instead, Alfonso Perez argues the Court has jurisdiction under the Suspension Clause of the Constitution.

---

[1] Other courts have found section 1252(a)(2)(A) inapplicable in similar situations. *See, e.g., Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *3 (E.D. Mich. Oct. 29, 2025); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *5-6 (N.D. Ohio Oct. 16, 2025); *Noori*

The Suspension Clause states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I ¶ 9, cl. 2.  The clause reflects that "the Framers considered the writ a vital instrument for the protection of individual liberty[.]" *Boumediene v. Bush*, 553 U.S. 723, 743 (2008).  It ensures "the Judiciary will have a time-tested device, the writ, to maintain the delicate balance of governance that is itself the surest safeguard of liberty" and "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Id.* at 745 (internal quotation marks removed).

In *Boumediene v. Bush*, the Supreme Court identified three factors "relevant in determining the reach of the Suspension Clause: (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Id.* at 766.

Alfonso Perez's status is undisputed.  He is a noncitizen who was paroled into the country upon a finding he was not a flight risk or a danger to the

---

*v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *8 (S.D. Cal. Oct. 1, 2025), *Munoz Materano v. Arteta*, --- F. Supp. 3d ---, ---, 2025 WL 2630826, at *9 (S.D.N.Y. Sept. 12, 2025); *Mata Velasquez v. Kurzdorfer*, --- F. Supp. 3d ---, ---, 2025 WL 1953796, at *6-7 (W.D.N.Y. July 16, 2025).  But because Alfonso Perez does not challenge the applicability of section 1252(a)(2)(A) to his claims, the Court will not address it.

community. DHS revoked Alfonso Perez's parole status and detained him with no meaningful process. Without habeas review, he would have no opportunity to challenge the legal basis of his detention. As to the second factor, Alfonso Perez was not apprehended at the border or a port of entry. He was apprehended at an immigration court in Miami, years after his parole into the country, where he had appeared to participate in his removal case and asylum application. And finally, there appear to be no practical obstacles to resolving Alfonso Perez's entitlement to a writ of habeas corpus. In fact, his claim is amenable to a prompt resolution based on the pleadings already filed with the Court. Thus, the Suspension Clause prevents section 1252(a)(2)(A) or any other section of the INA from stripping the Court of jurisdiction over this habeas action.[2]

### D. Exhaustion of Administrative Remedies

The respondents next ask the Court to dismiss this action because Alfonso Perez has not exhausted available administrative remedies. They argue he could have appealed the decision to dismiss his removal proceeding to the Board of Immigration appeals. But Alfonso Perez's habeas petition does

---

[2] Other courts applying the *Boumediene* factors in actions challenging detention based on DHS's new practices for expedited removal designations have reached the same conclusion. *See Noori v. Larose*, 25-cv-3006-BAS-MMP, 2025 WL 3295386, at *2-3 (S.D. Cal. Nov. 26, 2025); *Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *8-9 (S.D. Cal. Oct. 1, 2025); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1141-43 (D. Or. 2025). Neither party has identified—and the Court has not found—any opinion declining to apply the Suspension Clause to habeas actions with similar facts.

7

not challenge that decision. It challenges the legality of his current detention, which stems from the designation for expedited removal, revocation of parole, and courthouse arrest. The INA provides no administrative review of those decisions. *See* 8 U.S.C. § 1225(b)(1)(A)(i) ("the officer shall order the alien removed from the United States *without further hearing or review*" (emphasis added)).

The respondents also argue Alfonso Perez could challenge the expedited removal order in the Eleventh Circuit under section 1252(a)(1) because it is a final order of removal. Not so. "Neither the court of appeals nor a district court can review an expedited order of removal[.]" *Dubey v. Dep't of Homeland Sec.*, 154 F.4th 534, 537 (7th Cir. 2025).

### E. The Petitioner's Claims

Alfonso Perez asserts the respondents are detaining him in violation of the Fifth Amendment and the Administrative Procedures Act. Count 1 claims the respondents violated his procedural due process rights by stripping Alfonso Perez of procedural safeguards and a forum to adjudicate the legality of his detention. Count 2 claims Alfonso Perez's detention violates substantive due process because it is not reasonably related to a legitimate governmental purpose. And Count 3 claims the respondents violated the APA by revoking Alfonso Perez's parole without considering his facts and circumstances.

The respondents argue ICE's decision to place Alfonso Perez in expedited removal made detention not just lawful, but mandatory. They concede that Alfonso Perez has a liberty interest to be free of civil detention, and that he is at least entitled to notice and an opportunity to be heard. (*See* Doc. 9 at 13-14). But they claim he received due process at the October 8, 2025 hearing. They also argue Alfonso Perez's detention flows from ICE's unreviewable decision to designate him for expedited removal, so there is nothing here for the Court to review.

1. Due Process

The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous

9

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Alfonso Perez's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. When DHS detained Alfonso Perez in 2022, a border patrol agent found he was not a threat to national security and released him pending his immigration hearing. (Doc. 9-1). Since then, Afonso Perez's criminal history has remained clean, and he has proved he is no flight risk by attending his removal hearing.

ICE issued the order of expedited removal on October 8, 2025, the day of his courthouse arrest, without any new or additional information suggesting he is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated Alfonso Perez for expedited removal after revoking his parole. *See* 8. U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States from the class eligible for expedited removal). The procedure ICE used did not give Alfonso Perez an opportunity to challenge the legal basis for his

detention or its necessity. It is clear from the October 8, 2025 order that the immigration judge only considered ICE's authority to dismiss the removal proceedings. Alfonso Perez did not have an opportunity to contest the subsequent expedited removal order, revocation of parole, and detention. What is more, the Court recognizes significant value in additional safeguards, like the ones ICE has attempted to circumvent by dismissing his removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes.

Third, the government has not established any legitimate interest in Alfonso Perez's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Alfonso Perez's detention serves neither purpose. The immigration official who considered his circumstances in 2022 determined that he should be paroled on recognizance, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Alfonso Perez's right to due process by revoking his parole, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, --- F. Supp. 3d ---, ---, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords

11

individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

2. APA

The APA "requires agencies to engage in 'reasoned decisionmaking.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). It directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The scope of APA review is narrow. Courts "determine only whether the [agency] examined 'the relevant data' and articulated 'a satisfactory

explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'" *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019) (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43). A person in federal custody may seek APA review in an action requesting a writ of habeas corpus. 5 U.S.C. § 703.

Alfonso Perez claims the respondents violated the APA by revoking his parole without considering the facts and circumstances. The respondents argue Alfonso Perez is subject to mandatory detention due to ICE's discretionary decision to pursue expedited removal. But they do not claim ICE examined the facts before making that decision, nor do they articulate any explanation for it.

It is thus clear that ICE did not engage in reasoned decision-making here. ICE has not shown it considered any relevant facts when revoking Alfonso Perez's parole and detaining him. Nor have the respondents offered any explanation, satisfactory or otherwise, for that decision. And the decision to designate Alfonso Perez for expedited removal violates the INA because noncitizens who have been paroled into the country are not eligible for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A). Alfonso Perez's detention is unlawful because it is based on a set of arbitrary and capricious decisions in violation of the APA.

### F. Conclusion

For the reasons stated above, the Court finds Alfonso Perez's detention violates the Constitution and the APA.

Accordingly, it is hereby

**ORDERED**:

Ernesto Alfonso Perez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Alfonso Perez from custody within 24 hours of this Order. The respondents shall facilitate Alfonso Perez's transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 2, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1